UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| **ROBIN RICHARDSON DERRICK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action Number |
| **v.** | ) | **4:20-cv-00496-AKK** |
| | ) | |
| **KILOLO KIJAKAZI, Acting** | ) | |
| **Commissioner of Social Security,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Robin Richardson Derrick brings this action under 42 U.S.C. § 405(g) of the Social Security Act appealing the final adverse decision of the Commissioner of the Social Security Administration. The court finds that the Administrative Law Judge ("ALJ") applied the correct legal standards and that substantial evidence supports the ALJ's decision. Therefore, the court affirms the ALJ's decision.

**I.**

Derrick worked for more than thirteen years as a social worker, child welfare care worker, and case worker until she stopped working at age 36 due to limitations caused by, among other things, Ménière's disease with vertigo, rheumatoid arthritis,

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Accordingly, she is substituted for Andrew Saul as the defendant in this action pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

depression, anxiety, and fibromyalgia. R. 98, 117-18, 268-69. In December 2016, Derrick filed an application for a period of disability and disability insurance benefits, alleging a disability onset of December 2, 2016. R. 158-60, 231-32. The Commissioner denied her application, R. 161, and Derrick requested and received a hearing before an ALJ, R. 93, 168-69. The ALJ subsequently issued a decision finding that Derrick was not disabled. R. 64-80. The Appeals Council denied review, R. 1, rendering the ALJ's decision the final decision of the Commissioner. Derrick then filed this action for judicial review under 42 U.S.C. § 405(g).

## II.

This court's review is limited to determining whether the record contains substantial evidence to sustain the ALJ's decision and whether the ALJ applied the correct legal standard. *See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The ALJ's factual "findings are conclusive if they are supported by substantial evidence." 42 U.S.C. § 405(g). Substantial evidence "is 'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). If substantial evidence supports the Commissioner's factual findings, the court must affirm even if the evidence preponderates against those findings. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Thus, the court cannot reconsider the facts, reevaluate

the evidence, or substitute its judgment for the Commissioner's. *Id.* Instead, it must review the final decision as a whole and determine if it is "'reasonable and supported by substantial evidence.'" *Id.* (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). However, this "does not yield automatic affirmance" despite the limited scope of judicial review, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988), and reviewing courts are not to act as mere "automatons," *Bloodsworth*, 703 F.2d at 1239 (quotation omitted).

The ALJ's conclusions of law, in contrast, receive de novo review. *Martin*, 894 F.2d at 1529. Reversal is proper if the ALJ applies the incorrect legal standard or provides an insufficient basis for the court to determine that the correct legal principles have been followed. *See Bowen v. Heckler*, 748 F.2d 629, 635–36 (11th Cir. 1984).

### III.

The fundamental inquiry into any application for SSDI is whether the claimant is "disabled," 42 U.S.C. § 423(d)(2)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 21–22 (2003), meaning that she is unable to engage in any substantial gainful activity due to any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period greater than or equal to 12 months, 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).

The Social Security Act requires the ALJ to apply a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a); *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). Specifically, the ALJ must determine in sequence whether:

(1) the claimant is currently unemployed;

(2) the claimant has a severe impairment;

(3) the impairment meets or equals one listed by the Commissioner;

(4) the claimant is unable to perform his or her past work; and

(5) the claimant is unable to perform any work in the national economy.

*Phillips*, 357 F.3d at 1237. "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (citing 20 C.F.R. § 416.920(a)-(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the [Commissioner] to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

### IV.

In this case, at Step One, the ALJ determined that Derrick has not engaged in gainful activity since her alleged onset date. R. 69. At Step Two, the ALJ found that Derrick has severe impairments of Ménière's disease, rheumatoid arthritis,

4

fibromyalgia, major depressive disorder, and generalized anxiety disorder. R. 69. At Step Three, the ALJ found that Derrick did not have an impairment or combination of impairments that met or equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 70. Instead, the ALJ found Derrick had the RFC to perform a full range of work at all exertional levels, with the following limitations:

> [Derrick] cannot climb ladders, ropes, or scaffolds; and she must avoid all exposure to hazards . . . . She is also limited to unskilled work, which is simple, repetitive, and routine. Her supervision must be simple, direct, concrete, clam, respectful, and non-confrontational. Interpersonal contact with supervisors and coworkers must be incidental to the work performed, e.g., assembly work. . . . She should have only occasional, casual contact with the general public. She must have regular work breaks at least every two hours. She can set ordinary daily work goals, but may need assistance with long-term or complex planning. She should have only occasional, gradually-introduced workplace changes.

R. 72. Proceeding to Step Four, based on Derrick's RFC and the testimony of a vocational expert, the ALJ found that Derrick was unable to perform her past relevant work as a child welfare caseworker. R. 78. At Step Five, relying on the vocational expert's testimony, the ALJ determined that jobs exist in significant numbers in the national economy that Derrick could perform given her age, education, work experience and RFC, including cleaner and floor waxer. R. at 79. Therefore, the ALJ determined that Derrick was not under a disability as defined by

5

the Social Security Act from the alleged onset date through the date of the ALJ's decision. R. 80.

## V.

Derrick contends that (1) the ALJ failed to properly weigh the opinions of a treating physician, an examining physician, and an examining psychologist; (2) the ALJ failed to conduct a proper analysis of her fibromyalgia under SSR 12-2p; and (3) the Appeals Council improperly failed to consider new, material, and chronologically relevant evidence. The court considers these contentions in turn.

## A.

An ALJ must consider all medical opinion evidence in the record, 20 C.F.R. § 404.1527(b)–(c),[2] and "state with particularity the weight given to different medical opinions and the reasons therefor," *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). "In deciding how much weight to give a medical opinion, the ALJ considers, among other things, (1) the examining relationship; (2) the treatment relationship; (3) the extent to which the opinion is supported by medical evidence and explanations; and (4) whether the opinion is consistent with the record as a whole." *Bailey v. Comm'r of Soc. Sec.*, 802 F. App'x 462, 464 (11th

---

[2] 20 C.F.R. § 404.1520c superseded 20 C.F.R. § 404.1527(b) effective March 27, 2017, for claims filed after that date. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017). The court cites to the regulation that was in effect at the time Derrick filed her application in 2016.

Cir. 2020) (citing 20 C.F.R. § 404.1527 (c)). An ALJ generally "give[s] more weight to medical opinions from [a claimant's] treating sources" than to opinions from examining or consultative physicians. 20 C.F.R. § 404.1527(c)(2).

### 1.

Derrick contends first that the ALJ failed to accord proper weight to the opinions of Dr. David A. McLain, her treating rheumatologist. Doc. 8 at 2, 28-33. An ALJ must afford a treating physician's opinion "'substantial or considerable weight unless good cause is shown to the contrary.'" *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (quoting *Phillips*, 357 F.3d at 1240). "Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his or her own medical records." *Id*. (citation omitted). If an ALJ assigns less than substantial weight to the opinion of a treating physician, "he 'must clearly articulate the reasons' for doing so." *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41). A failure to do so is reversible error. *Schink*, 935 F.3d at 1259 (citation omitted).

At issue here are opinions contained in a physical capacities evaluation and clinical assessment of pain form Dr. McLain completed. R. 365-66. Dr. McLain opined, among other things, that Derrick can lift only ten pounds occasionally and five pounds frequently; sit for four hours and stand or walk for two hours during an

eight-hour workday; will need to lie down for fifteen minutes and take unscheduled breaks during the workday; can rarely push or pull, climb stairs or balance, perform gross manipulations, or work around hazardous machinery; and would miss more than four days per month as a result of her fibromyalgia. R. 365. Dr. McLain further opined that Derrick's pain is "virtually incapacitating" and physical activity would increase her pain to such an extent that bedrest or medication would be necessary. R. 366.

The ALJ considered these opinions, but gave them little weight because he found that they lack support and are inconsistent with Dr. McLain's own records and other evidence in the record, including records from the Gadsden Family Practice and findings from Derrick's consultative examination. R. 76. In making that finding, the ALJ noted that Dr. McLain is a specialist in rheumatology who treated Derrick during the relevant time and that "'fibromyalgia' [was] the sole rational provided for the limitations opined." *Id.* Contrary to Derrick's suggestion otherwise, substantial evidence supports the ALJ's decision to give Dr. McLain's opinions little weight.

To begin, and as the ALJ noted, Dr. McLain's own treating notes indicate that Derrick's fibromyalgia was moderate and stable, and that her other conditions, including Ménière's disease, were mild and stable. R. 351, 358-59, 508, 515, 581, 634, 650, 657. In addition, Dr. McLain consistently observed upon examination that

8

Derrick had a normal gait and range of motion. R. 354-55, 361-62, 504, 512, 518, 584, 637, 653, 660, 683-84. And, although Dr. McLain's examinations in July and December 2016 and January 2017 revealed that Derrick had twenty-two tender joints, including in her hands, R. 504, 511, 518, 584, 608, Derrick's condition appeared to improve, and Dr. McLain found that Derrick had no joint swelling and no tenderness, swelling, effusion, or limited range of motion in her hands in subsequent exams in 2017, 2018, and 2019, R. 354-55, 361-62, 637, 653, 658, 684. Finally, although Dr. McLain opined in his treating notes that Derrick had "become disabled,"[3] he provided only conservative treatment for Derrick's fibromyalgia and other conditions, and he encouraged Derrick to exercise more. R. 356, 363, 506, 513, 519-20, 586, 591-92, 603, 611, 639, 655, 661-62, 685-86.

In addition, as the ALJ also noted, Dr. McLain's opinions are inconsistent with other evidence in the record. R. 76. Similar to Dr. McLain's records, treatment notes from Gadsden Family Practice indicate that Derrick ambulated normally and was in no acute distress. R. 393, 396, 671, 694. Likewise, records from Alabama Digestive Diseases, P.C. during the relevant time reveal that upon physical exam in December 2016, Derrick had a normal gait and station, normal motor strength, and

---

[3] Dr. McLain's opinion that Derrick was disabled is an issue reserved for the Commissioner and is not entitled to any deference. *See Cain v. Comm'r, Soc. Sec. Admin.*, 777 F. App'x 408, 409 (11th Cir. 2019) (citing 20 C.F.R. § 404.1527(d)(1)-(3); *Caulder v. Bowen*, 791 F.2d 872, 877-78 (11th Cir. 1986)).

no tenderness and normal movement of all extremities. R. 408, 469. In light of the inconsistencies between Dr. McLain's opinions and his own treating notes and records from other medical providers, substantial evidence supports the ALJ's decision to give Dr. McLain's opinions little weight.

**2.**

Derrick also contends that the ALJ failed to properly consider the opinions of Dr. Jimmy A. Oguntuyo, an examining consultative physician, and Dr. Martha Kennon, an examining consultative psychologist. Doc. 8 at 37-43. Unlike the opinions of a treating physician, opinions of consultative examining physicians are not entitled to substantial weight or deference. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (citation omitted); *Walker v. Comm'r, Soc. Sec. Admin.*, 835 F. App'x 538, 542 (11th Cir. 2020) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). And, as explained below, substantial evidence supports the ALJ's decision to give these two opinions little weight.

(a)

Dr. Oguntyo, a State Agency consultative physician, examined Derrick and opined that "Derrick may not be able to perform any meaningful work related activities that may involve prolonged standing, walking, lifting, carrying, handling objects because of the worsening rheumatoid arthritis at multiple sites, especially the wrists, hands, shoulders, and low back[.]" R. 576. Dr. Oguntyo indicated that the

limitations were due to, among other things, Derrick's worsening chronic fatigue, "fibromyalgia affecting most of the joints of the body [and] waxing and waning bilateral Ménière's disease." *Id.* The ALJ considered Dr. Oguntyo's opinions, but gave them little weight based on his findings that they are inconsistent with and unsupported by Dr. Oguntyo's examination and inconsistent with the treating notes in the record. R. 77. Substantial evidence supports that decision.

Upon physical examination, Dr. Oguntyo found that Derrick's gait was "good" and she could "heel walk, toe walk, and perform the squat and rise tests." R. 575. Dr. Oguntyo also found that Derrick had "good" hand grip; "good strength against resistance after repetitive exercise[;]" normal grip strength and dexterity; normal range of motion in her dorsolumbar spine, hips, knees, ankles, shoulders, elbows, forearms, and wrists; and could "button, tie shoelaces, pick up small objects, hold a glass, and turn a doorknob." R. 575, 577-78. As the ALJ noted, those findings are inconsistent with and do not support Dr. Oguntyo's opinions.[4] *See* R. 77.

In addition, Dr. Oguntyo's opinions are not consistent with other medical evidence in the record. As the ALJ explained in his decision, treating notes from

---

[4] There are also no objective findings in Dr. Oguntyo's evaluation related to Derrick's fatigue. *See* R. 574-79. It seems his opinion related to this issue is based solely on Derrick's reports. In any event, this opinion is inconsistent with other medical evidence. For example, records from Carr Mental Wellness, LLC indicate that Derrick repeatedly denied weakness and fatigue at appointments in 2017, 2018, and January 2019. R. 533, 565, 614, 621, 625, 627, 629, 645, 647, 677. And, Derrick reported that Vyvanse, which Dr. McLain prescribed in September 2018, helped with her fatigue. R. 75, 662, 681.

11

Derrick's medical providers reveal that Derrick generally walked with a normal or steady gait, had no joint effusion or swelling, and no limitation to range of motion in her joints. R. 73-74, 77, 355, 541. In addition, based on records from Pappas Ear Clinic, Derrick's episodes of vertigo appeared to improve after December 2016 when she reported experiencing three to four episodes of vertigo a week that "can last hours in duration." R. 74, 542. Indeed, Dr. Dennis G. Pappas's records show that he discussed treatment options for Derrick's Meniere's disease, including "left dexamethasone perfusion," and that Derrick would proceed with the perfusion if her dizziness recurs or does not respond to treatment. R. 540. But, nothing in the record suggests that Derrick proceeded with the perfusion or returned to Dr. Pappas for further treatment. *See* R. 539-45. Moreover, Dr. McLain's records reflect that after Dr. Oguntyo's evaluation, Derrick's Ménière's disease symptoms, which include vertigo, were only mild. R. 74, 351, 358, 63, 650, 658, 681.

To close, based on these records and Dr. Oguntuyo's own examination findings, substantial evidence supports the ALJ's decision to give Dr. Oguntuyo's opinions little weight.

(b)

Dr. Kennon, a State Agency consultative psychologist, conducted a psychological evaluation of Derrick, and opined that Derrick "is able to understand, carry out, and remember instructions[,] . . . sustain concentration and persist in a

12

work related activity at a reasonable pace[,] [and] is able to maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public." R. 571. Dr. Kennon also opined that Derrick "is likely not able to deal with normal pressures in a competitive work setting due to depressive issues and fatigue" and that "[h]er fatigue and depressive issues may limit the length of time she is able to function satisfactorily in a work setting." *Id.* The ALJ gave great weight to Dr. Kennon's opinions about Derrick's work ability because he found they are well-supported by Dr. Kennon's examination findings and consistent with other findings in the record. R. 77. However, the ALJ gave little weight to Dr. Kennon's opinions regarding the effects of Derrick's depression and fatigue because he found they are not supported by Dr. Kennon's examination and are inconsistent with other evidence in the record. *Id.* Substantial evidence supports the ALJ's decision.

First, Dr. Kennon found that Derrick's thought processes, memory, and judgment were adequate even though Derrick reported brain fog due to a fibromyalgia flareup. R. 571. Next, as mentioned above, Derrick generally denied fatigue during appointments to Carr Mental Wellness in 2017, 2018, and January 2019. R. 533, 565, 614, 621, 625, 627, 629, 645, 647, 677. And, although Derrick reported that her depression was worse at an appointment in July 2017, R. 625, she subsequently reported improvement, R. 614, 618, 621, 645, 647. Likewise, in October 2018, Derrick reported to Dr. Allison Vann at Gadsden Family Practice that

13

Zoloft helps alleviate her depression. R. 671. Moreover, in March 2017, Dr. Oguntyo indicated that Derrick's depression was stable on medication, R. 574, an assessment shared in February, May, and July 2018 by Derrick's provider at Carr Mental Wellness, R. 615, 646, 648. Derrick also reported to Dr. McLain in January 2019 that Vyvanse helped with her fatigue. R. 681. Finally, as the ALJ noted, Derrick's medical records give no indication that she suffered "significant periods of debilitating depression of the nature described by Dr. Kennon," R. 77, and Derrick has not cited any evidence to contradict the ALJ's assessment, *see* docs. 8; 10.

\*     \*     \*

In summary, the record reveals that Derrick has suffered from pain and fatigue and other symptoms of fibromyalgia, Ménière's disease, depression, and anxiety for years. Still, the issue before the court is whether substantial evidence supports the ALJ's decision, not whether evidence may support a contrary decision. *See Martin*, 894 F.2d at 1529. As discussed above, substantial evidence supports the ALJ's finding that Dr. McLain's, Dr. Oguntuyo's, and Dr. Kennon's opinions were inconsistent with their own examinations or treating notes and other medical records. Thus, in light of the substantial deference owed to the Commissioner's decision, *Dyer v. Barnhard*, 395 F.3d 1206, 1212 (11th Cir. 2005), the court finds that the ALJ did not err in his evaluation of the opinions at issue.

**B.**

Derrick contends that the ALJ did not properly consider her fibromyalgia under SSR 12-2p, which recognizes fibromyalgia as a valid "basis for a finding of disability" and provides guidance on how the Commissioner develops evidence and evaluates fibromyalgia in disability claims.[5]  Docs. 8 at 33-36; 10 at 5-7; SSR 12-2p, 2012 WL 3104869 (July 25, 2012).  However, Derrick offers no details regarding how the ALJ erred, and her briefing on this issue consists primarily of block quotes from cases remanding disability claims based on an improper analysis of a claimant's fibromyalgia.  Docs. 8 at 33-36; 10 at 5-7.  In the absence of any specific references to the record, or arguments about the cases quoted, it appears that Derrick contends that the ALJ improperly discredited her subjective complaints based on a lack of objective evidence.  *See id.*  That contention is unavailing because the ALJ did not solely rely on the lack of objective findings to conclude that Derrick was not disabled based on her fibromyalgia.

Here, the ALJ found that Derrick suffers from the severe impairment of fibromyalgia with eighteen of eighteen trigger points.  R. 69, 74.  As required by SSR 12-2P, the ALJ then determined that Derrick's fibromyalgia does not meet or

---

[5] Fibromyalgia is a "rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease." *Davis v. Astrue*, 287 F. App'x 748, 762 (11th Cir. 2008) (quoting *Benecke v. Barnhart,* 379 F.3d 587, 589–90 (9th Cir. 2004)).

15

equal the requirements of listing 14.09 for inflammatory arthritis because, among other things, Derrick did not have persistent inflammation in one or more joints resulting in an inability to ambulate effectively or perform fine and gross movements effectively. R. 70; *see also* SSR 12-2p, 2012 WL 3104869, at *6. Derrick has not offered any argument or cited anything in the record to suggest that the ALJ erred by finding that her fibromyalgia did not meet or equal the listing, *see* docs. 8; 10, and as discussed above, Derrick's medical records indicate that she could ambulate and perform gross and fine movements effectively. *See* section V(A)(1), *supra*.

In assessing Derrick's RFC, the ALJ correctly noted that Dr. McLain described Derrick's fibromyalgia as chronic and moderate, and consistently found that McLain had no joint effusion or swelling upon exam. R. 74, 351, 358-59, 508, 515, 581, 634, 650, 657. Consistent with SSR 12-2P,[6] the ALJ also noted that Derrick's physicians have not prescribed, and Derrick had not requested, pain medication stronger than Aleve, R. 74, 351-64, 390-93, 404-32, 466-73, 479-96, 501-20, 523-27, 533-45, 548-61, 565-66, 579, 581-87, 591-612, 614-32, 634-73, 677-95, until Dr. McLain prescribed Mobic in January 2019, R. 74, 685. In addition, after Dr. McLain prescribed Vyvanse in September 2018, Derrick reported that it

---

[6] The Rule provides in relevant part that when "evaluat[ing] the intensity and persistence of [a claimant's] pain or other symptoms and determ[ing] the extent to which the symptoms limit the [claimant's] capacity for work[,]" an ALJ considers, among other things, "medication or other treatments the [claimant] uses, or has used to alleviate symptoms . . . ." SSR 12-2p, 2012 WL 3104869, at *5.

16

helped her fatigue. R. 75, 661, 681. In light of the ALJ's discussion and those findings, the ALJ did not rely solely on a lack of objective evidence to determine that Derrick's fibromyalgia was not disabling. *See* R. 70, 74. And, Derrick has not pointed to any evidence related to her fibromyalgia that the ALJ failed to consider or evaluate properly under SSR 12-2P. *See* docs. 8; 10. As a result, Derrick has not shown that the ALJ erred in his consideration of her fibromyalgia or in his conclusion that her fibromyalgia was not disabling.

## C.

Derrick also argues that the Appeals Council erred by refusing to review evidence she submitted on appeal. Doc. 8 at 43-48. In general, a claimant may present new evidence in support of her application at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. § 404.900(b)). Thus, a claimant may present new evidence to the Appeals Council, and the Council "'must consider new, material, and chronologically relevant evidence' that the claimant submits." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram,* 496 F.3d at 1261). "Evidence is material if a reasonable possibility exists that the evidence would change the administrative result," *Hargress v. Soc. Sec. Admin, Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (citing *Washington*, 806 F.3d at 1320), and evidence is chronologically relevant when it "relates to the period on or

before the date of the [ALJ's] decision . . . ," 20 C.F.R. § 404.970(a)(5). "[W]hether evidence meets the new, material, and chronologically relevant standard 'is a question of law subject to [] de novo review.'" *Washington*, 806 F.3d at 1321 (quotation omitted). Finally, "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

At issue here are treatment records in 2019 from Dr. McClain dated June 28 through October 4; Carr Mental Wellness dated April 10 through September 3; and Gadsden Family Practice dated March 12 through October 28.[7] R. 2, 9-22, 29-37, 39-63. The Appeals Council found that those records "do[] not relate to the period at issue," and, therefore "do[] not affect the decision about whether [Derrick was] disabled beginning on or before" the date the ALJ issued his decision. R. 2. The court finds no error in that conclusion.

As an initial matter, the Appeals Council did not refuse to consider the new medical records as Derrick contends. Rather, the Appeals Council considered the records and found that they were not chronologically relevant. *See* R. 2; *Hargress*,

---

[7] Derrick also submitted records from Gadsden Family Practice dated January 22, 2019 to the Appeals Council, R. 2, but those records were presented to and considered by the ALJ, *see* R. 70, 74, 691-95. Thus, the Appeals Council properly found that there is no reasonable probability that those records would change the outcome of the decision, *see* R. 2, and Derrick does not challenge that finding on appeal, *see* docs. 8; 10.

18

883 F.3d at 1309.[8] The "Appeals Council was not required to give a more detailed explanation or to address each piece of new evidence individually." *Hargress*, 883 F.3d at 1309 (citation omitted). In addition, Derrick has not explicitly argued that the new records are chronologically relevant, but instead simply stated that the records "show[] continued treatment for all conditions for which [] Derrick had been treated [] since [] her alleged onset date . . . ." Doc. 8 at 43. But, evidence of continuing treatment after the date of the ALJ's decision does not necessarily relate to the period before the ALJ's decision. Moreover, the court finds nothing in the new records to show that they relate to the relevant time. *See* R. 9-22, 29-37, 39-63. Rather, the records consist of treating notes documenting Derrick's condition and symptoms at the time of treatment and after the ALJ's decision. *See id.* Thus, because Derrick has not shown that the new records are chronologically relevant, *see* doc. 8 at 10-12, 43-45, the court finds that the Appeals Council did not err by declining to grant review.

## VI.

For the reasons discussed above, the ALJ applied the correct legal standards and substantial evidence supports his decision. Consequently, the Commissioner's

---

[8] In *Hargress*, the Eleventh Circuit found that a similar statement that new records submitted to the Appeals Council were "'about a later time' than the ALJ's [] decision" was sufficient to show that the Council did not refuse to consider new evidence without first determining whether it was chronologically relevant. 883 F.3d at 1309. And, the Circuit found that the Appeals Council did not err by declining to consider new medical records because they were not chronologically relevant. *See id.*

final decision is due to be affirmed, and the court will issue a separate order in accordance with this opinion.

**DONE** the 3rd day of September, 2021.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE